UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

A. L.A. SULIEMAN, M.D.,

                              Plaintiff,

       v.

ROSWELL PARK CANCER INSTITUTE,

                            Defendants.
_____

**REPORT
and
RECOMMENDATION**

05-CV-0766A(F)

APPEARANCES:         A. L.A. SULIEMAN, *Pro Se*
                            4948 Lannoo Street
                            Detroit, Michigan  48236

                            PHILLIPS LYTLE LLP
                            Attorney for Defendant
                            JAMES R. GRASSO, of Counsel
                            3400 HSBC Center
                            Buffalo, New York 14203

                            ANDREW M. CUOMO
                            Attorney General, State of New York
                            Attorney for Defendant Dr. Mohler
                            KIM S. MURPHY
                            Assistant Attorney General, of Counsel
                            107 Delaware Avenue
                            Fourth Floor
                            Buffalo, New York 14202

## <u>JURISDICTION</u>

      This case was referred to the undersigned by Honorable Richard J. Arcara on

December 16, 2005, for all pretrial matters, including report and recommendation on

dispositive motions.  The matter is presently before the court on Defendant Dr. Mohler's

motion to dismiss (Doc. No. 26), filed October 11, 2007.

# BACKGROUND and FACTS[1]

This action arises from an incident in which Plaintiff A. L.A. Sulieman, M.D. ("Plaintiff" or "Dr. Sulieman"), who is both a native of Iraq[2] and a Muslim, while employed as a Clinical Fellow pursuant to a Fellowship Contract ("the Fellowship") in the Urologic Oncology Department of Defendant Roswell Park Cancer Institute ("Roswell"), allegedly witnessed, on September 15, 2004, Defendant Program Director James L. Mohler, M.D. ("Dr. Mohler" or "Defendant") (together, "Defendants"), engage in professional misconduct while performing a surgical procedure, specifically, failing to treat the cause of a patient's uncontrolled and excessive bleeding, necessitating a second surgical procedure.  According to Plaintiff, Dr. Mohler attempted to conceal the misconduct by changing Plaintiff's operative and clinical notes in the patient's chart, and Plaintiff questioned Dr. Mohler's behavior.  Plaintiff further alleges that following the incident, the working relationship between Plaintiff and Dr. Mohler deteriorated, with Dr. Mohler advising Plaintiff to return to Iraq, despite the fact that Plaintiff has two children who live with Plaintiff's former wife in Michigan.  Plaintiff asserts that Dr. Mohler denied Plaintiff's several requests for permission to travel to Michigan to attend a court hearing relating to a child custody matter, and to visit with his children, instructing Plaintiff to apply for unpaid vacation time.  On February 11, 2005, Dr. Mohler presented Plaintiff with a letter request that Plaintiff take an indefinite leave of absence.  When Plaintiff refused, Dr. Mohler asked Plaintiff to resign the Fellowship because Dr. Mohler no

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] The record does not indicate Plaintiff's country of citizenship.

longer wanted Plaintiff to work at Roswell.

Immediately upon receiving the letter request, Plaintiff filed a complaint, including a description of the incident, with Dr. Mohler's supervisor, Roswell's Medical Director Judy Smith, M.D. ("Dr. Smith").  By letter dated March 8, 2005, Dr. Mohler and Mr. Richard Paris, Chief of Human Resources Department at Roswell, informed Plaintiff that his Fellowship ended on February 17, 2005.

Plaintiff timely filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") ("EEOC Complaint"), against Roswell.[3]  On August 1, 2005, the EEOC, after finding no violation of law had occurred, issued Plaintiff a Notice of Right to Sue, thereby terminating the EEOC's investigation into the matter, and granting Plaintiff the right to file a civil action regarding the administratively grieved claims.

On October 24, 2005, Plaintiff, proceeding *pro se*, commenced this employment discrimination action alleging four causes of action against both Roswell and Dr. Mohler, including (1) violation of an unspecified "whistle blower statute" ("First Cause of Action"); (2) wrongful discharge ("Second Cause of Action"); (3) retaliatory discharge in violation

---

[3] Plaintiff did not name Dr. Mohler as a Respondent to the EEOC complaint, but the record establishes that Plaintiff raised his allegations about Dr. Mohler at a mediation session with the EEOC held on May 23, 2005.  *See* June 27, 2007 Report and Recommendation (Doc. No. 18) at 3.  Although a plaintiff, as a precondition to filing a Title VII claim in federal court, must first pursue available administrative remedies by timely filing a complaint with the EEOC, and the failure to do so generally waives an otherwise valid claim, claims that were not specifically asserted before the EEOC, yet which are reasonably related to those that were filed with the investigation such that the conduct complained of would fall within the scope of the EEOC investigation which reasonably can be expected to grow out of the charge that was made, may be pursued in court.  *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (citing cases).  Here, Dr. Mohler has not asserted Plaintiff's failure to exhaust administrative remedies with regard to the claims against him requires dismissal, nor has Dr. Mohler filed an answer and has not yet been required to do so.  *See Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000) (holding presentation of Title VII claim to EEOC is not jurisdictional prerequisite but, rather, only a precondition to suit that can be waived by the parties).

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq*. ("Title VII")

("Third Cause of Action"); and (4) employment discrimination based on national origin

and religion in violation of Title VII ("Fourth Cause of Action").   Plaintiff seeks as relief

for such claims injunctive orders, damages, costs, attorney's fees and punitive

damages.  Complaint at 5, Prayer for Relief.

On December 12, 2005, separate motions to dismiss were filed by each

Defendant.  Specifically, Roswell sought dismissal of the Third and Fourth Causes of

Action, respectively, the Title VII retaliation and religious discrimination claims, for

failure to exhaust administrative remedies, whereas Dr. Mohler sought dismissal of the

same claims on the basis that individuals are not proper defendants to Title VII claims.

Both Roswell and Dr. Mohler also sought dismissal of the First Cause of Action alleging

a violation of an unspecified whistle blower statute for failure to comport with Fed. R.

Civ. P. 8(a)(2)'s pleading requirement because the claim neither identified the specific

statute allegedly violated, nor the factual basis for such violation; however, neither

Defendant moved to dismiss the Second Cause of Action.

On June 27, 2007, the undersigned issued a Report and Recommendation (Doc.

No. 18) ("the Report and Recommendation"), recommending dismissal of the Third and

Fourth Causes of Action as against  Dr. Mohler, but not the First Cause of Action

alleging a violation of an unspecified whistle blower statute construed by the court as

alleging a claim under the New York Health Care Whistleblower's Protection Act of

2002, codified at New York Labor Law ("N.Y. Lab. Law")[4] §§ 740-41 ("the Act").  The

---

[4] Unless otherwise indicated, references to N.Y. Lab. Law are to "McKinney 2002."

undersigned also recommended denying Roswell's motion insofar as Roswell sought dismissal of the First, Third and Fourth Causes of Action.  Because neither Roswell nor Dr. Mohler has moved to dismiss the Second Cause of action alleging a state contract wrongful discharge claim against both Roswell and Dr. Mohler, the Second Cause of Action remains pending against both Defendants.[5]  By order filed September 26, 2007, Chief District Judge Richard J. Arcara adopted the Report and Recommendation and the Third and Fourth Causes of Action were dismissed as against Dr. Mohler, but no other causes of action were dismissed.

On October 11, 2007, Dr. Mohler filed the Second Motion to Dismiss (Doc. No. 26) ("Defendant's motion"), along with a Memorandum of Law in Support of Defendant Mohler's Motion to Dismiss (Doc. No. 27) ("Defendant's Memorandum"), and the Declaration of James R. Grasso, Esq., attorney for Roswell, stating Roswell does not oppose Dr. Mohler's motion (Doc. No. 29) ("Grasso Declaration").  On November 9, 2007, Plaintiff filed Plaintiff's Answer to Defendant Mohler's Motion to Dismiss (Doc. No. 32) ("Plaintiff's Response").  In further support of Defendant's motion, on November 21, 2007, Dr. Mohler filed the Reply Declaration of Assistant Attorney General Kim S. Murphy (Doc. No. 33) ("Murphy Reply Declaration").  Oral argument was deemed unnecessary.

---

[5] Resolution of the federal Title VII claims against Roswell and the state whistle blower claim against both Roswell and Dr. Mohler, all which remain pending, involve "a common nucleus of operative fact," such that although no federal claims remain as against Dr. Mohler, the court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state whistle blower claim with regard to both Roswell and Dr. Mohler.  *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 334-35 (2d Cir. 2006) (district court has supplemental jurisdiction over two disputes arising from a common nucleus of operative fact, "even if the state law claim is asserted against a party different from the one named in the federal claim." (internal citation omitted)).

Based on the following, Defendant's motion should be GRANTED in part and DENIED in part.

## DISCUSSION

### 1. Failure to Argue for Dismissal of Whistleblower Claim in Connection with Earlier Motion

Preliminarily, the court addresses Plaintiff's argument that Defendant's motion to dismiss, as against Dr. Mohler, the First Cause of Action alleging a whistleblower's claim under N.Y. Lab. Law § 741 ("§ 741"), based on Dr. Mohler's alleged retaliatory dismissal of Plaintiff for complaining of malpractice by Dr. Mohler, is precluded by Dr. Mohler's failure to argue for such dismissal in the objections filed and oral argument held with regard to the Report and Recommendation. As Dr. Mohler contends in further support of the instant motion, Murphy Reply Declaration ¶ 11, because the earlier motion sought dismissal of the First Cause of Action as insufficiently pleaded in accordance with Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)"), the issue as to whether the First Cause of Action stated a § 741 whistleblower's claim was not then before the court. As such, Dr. Mohler could not raise the arguments presented in connection with the instant motion with regard to the objections filed concerning the Report and Recommendation, and Plaintiff's assertion to the contrary provides no basis for denying Defendant's motion.[6] Given that Dr. Mohler, to date, has yet to file an answer to the Complaint, the initial motion pursuant to Fed. R. Civ. P. 8(a)(2) does not foreclose a subsequent motion

---

[6] The court notes that on October 12, 2007, Roswell filed an answer (Doc. No. 28); however, Roswell has not filed any further motion to dismiss.

pursuant to Rule 12(b)(6).  *See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico, S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (defendant, by filing variety of motions, including motions to dismiss under Rule 12(a) and (b), but no responsive pleading, did not waive defense of sovereign immunity which is lost if not made in first responsive pleading).  Accordingly, Dr. Mohler's failure to raise the issues presented on the instant motion in his initial motion pursuant to Rule 8(a)(2) is no bar to the court's consideration of Defendant's motion.  The court thus turns its attention to the merits of Dr. Mohler's Rule 12(b)(6) motion to dismiss for failure to state a claim.

**2.     Motion to Dismiss**

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 510 U.S. 808 (1996);  *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995).  The court is required to read the complaint with great generosity on a motion to dismiss.  *Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555 (2d Cir. 1985).  The complaint may be dismissed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*"  Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The issue is not whether a plaintiff is likely to prevail ultimately, "but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the

pleading that a recovery is very remote and unlikely but that is not the test." *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer*, 416 U.S. at 236).

Dr. Mohler seeks to dismiss the First Cause of Action, construed by the court as a violation of § 741, Report and Recommendation at 11-12, asserting § 741 is inapplicable to Dr. Mohler because § 741 applies only to employers, rather than to employees and, as an employee of Roswell, a New York public benefit corporation, Dr. Mohler is considered, under New York law, a public actor who cannot be sued in his individual capacity. Dr. Mohler's Memorandum at 2-3 (citing New York Public Authorities Law ("N.Y. Pub. Auth. Law")[7] § 3557(1)). Dr. Mohler further maintains Eleventh Amendment immunity shields both Roswell and him from liability under § 741 in his official capacity. *Id.* at 3-4.

In opposition to dismissal, Plaintiff argues that because Dr. Mohler, working as Plaintiff's supervisor at Roswell, received and administered the Fellowship grant funds under which Plaintiff worked, Dr. Mohler is more properly considered an agent of Roswell and Plaintiff's employer and, as such, is subject to § 741. Plaintiff's Response ¶¶ 1, 3, 5. Plaintiff further contends that Dr. Mohler failed to object to the Report and Recommendation on the basis that the Complaint failed to state a whistleblower's claim under § 741, and is now barred from doing so. *Id.* ¶ 4.

In further support of dismissal, Dr. Mohler asserts that at oral argument on objections to the Report and Recommendation, Assistant Attorney General Kim S. Murphy indicated her intention to move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

---

[7] Unless otherwise indicated, references to N.Y. Pub. Auth. Law are to "McKinney 2001."

Plaintiff's § 741 whistleblower claim against Dr. Mohler, in contrast to the earlier motion which challenged, under Fed. R. Civ. P. 8(a)(2)'s pleading requirement, that the First Cause of Action failed to identify either the specific statute allegedly violated or the factual basis for such violation.  Murphy Reply Declaration ¶¶ 6 and 11.  Dr. Mohler also reiterates that § 741 does not apply to him in his individual capacity.  *Id*. ¶¶ 7-10.

As discussed below, the Complaint fails to state a § 741 whistleblower claim against Dr. Mohler in his individual capacity because, under New York state law, Dr. Mohler is a public employee and, as such, is not subject to suit.  Discussion, *infra*, at 9-11.  Nevertheless, the court finds the Complaint does state a claim against Dr. Mohler, based on his supervisory position, Complaint ¶ 3, insofar as Dr. Mohler is sued alternatively, as acting as Plaintiff's supervisor and as an agent of Roswell, because (i) Roswell, although a New York public corporation, is not entitled to Eleventh Amendment immunity, and thus, as Roswell's agent or employee, neither is Dr. Mohler, Disussion, *infra*, at 12-23, and (ii) the definition of employer as used in § 741 can be broadly construed as including an employer's "agent" and an employee's "supervisor" like Dr. Mohler as Plaintiff has alleged.  Discussion, *infra*, at 23-27.

### A.    Personal Liability for § 741 Claim

Dr. Mohler asserts in support of dismissal that as an employee of Roswell, he is a public actor who cannot be sued in his individual capacity under the Act.  Defendant's Memorandum at 2-3.  Plaintiff argues in opposition that the Act does not specify that it does not provide for individual liability and, in any event, because Dr. Mohler, Plaintiff's supervisor at Roswell, applied for, received and administered the grant funds for the

Fellowship under which Plaintiff had worked as a clinical Fellow at Roswell, and was authorized to hire and fire employees who performed the Fellowship work financed by the grant, Dr. Mohler was Roswell's agent and could be considered an employer under the Act.  Plaintiff's Response ¶¶ 1, 3, 5.

Preliminarily, the court observes that it is exercising supplemental jurisdiction over the state claims against Dr. Mohler, which are pendent to Plaintiff's federal Title VII claims against Roswell and, as such, the court must apply state substantive law to the state claims.[8]  *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied*, 502 U.S. 1060 (1992).  Thus, the court considers Roswell's status under New York law.

Roswell has been statutorily designated as a New York public corporation.  N.Y. Pub. Auth. Law § 3553.1(a) ("There is hereby created a corporation to be known as the Roswell Park Cancer Institute Corporation which shall be a body corporate and politic constituting a public corporation.").  Further, officers and employees of Roswell have been "deemed public officers or public employees, as the case may be, in the [New York State] civil service," N.Y. Pub. Auth. Law § 3557.1 (bracketed material added), and "entitled to all the rights thereto as if such employee was a state employee subject to the pertinent provisions of the civil service law."  N.Y. Pub. Auth. Law § 3557.5.  Under the relevant civil service law, New York Civil Service Law ("N.Y. Civ. Serv. Law")[9] § 75-b (authorizing New York civil service employees to commence legal action against public

---

[8] Dr. Mohler does not contest the court's exercise of supplemental jurisdiction over Plaintiff's § 741 claim.

[9] Unless otherwise indicated, references to N.Y. Pub. Serv. Law are to "McKinney 1987."

employers for retaliatory actions), public employees are immune in their individual capacity from suit in actions arising under state law.  *Wallikas v. Harder*, 67 F.Supp.2d 82, 86 (N.D.N.Y. 1999) ("'Public employees in their individual capacities do not belong to the class of defendants defined by the statute.  A public employee, regardless of rank, is not the employer of a fellow employee.  Therefore, a public employee in his individual capacity may not be sued under § 75-b.'" (quoting *Kirwin v. New York State Office of Mental Health*, 665 F.Supp. 1034, 1039 (E.D.N.Y. 1987))).  *See also Moore v. County of Rockland*, 596 N.Y.S.2d 908, 911 (3d Dep't 1993) ("Civil Service Law § 75-b applies only to retaliatory discharges by public employers, not to actions by fellow public employees . . . .").  Accordingly, Dr. Mohler, insofar as he is a Roswell employee, Defendant's Memorandum at 3, which Plaintiff does not dispute, is, under New York law, immune in his individual capacity from liability on Plaintiff's § 741 whistleblower claim, and Defendant's motion should be GRANTED as to that basis for Plaintiff's claim.

### B.    Employer Liability for § 741 Claim

Plaintiff maintains that Dr. Mohler, as Plaintiff's supervisor charged with the responsibility of applying for, receiving and distributing the grant funds for the Fellowship program under which Plaintiff worked at Roswell, including the authority to hire and fire employees under the program, is, as well as Roswell, subject to § 741 liability in his official capacity as an agent of Roswell, Plaintiff's public employer.  Plaintiff's Response ¶¶ 3, 5.  As relevant, Plaintiff alleged that Dr. Mohler is a Defendant "with whom [Plaintiff] sought employment, was employed by, received [Plaintiff's] paycheck from, or whom [Plaintiff] believed also controlled the terms and conditions

under which [Plaintiff was] paid or worked."  Complaint ¶ 3.  In support of dismissal, Dr.

Mohler asserts that insofar as he is sued in his capacity as an agent of Plaintiff's public

employer, Roswell, he is entitled to immunity under the Eleventh Amendment from legal

or equitable claims brought by private parties.[10]  Defendant's Memorandum at 3-4;

Murphy Reply Declaration ¶ 10.  The court thus considers whether Roswell is entitled to

Eleventh Amendment immunity, as well as Dr. Mohler, and, if not, whether Dr. Mohler,

as Roswell's agent and Plaintiff's supervisor, can be held liable under § 741 as Plaintiff's

employer.

### 1.    Eleventh Amendment Immunity

The Eleventh Amendment states, "[t]he judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by citizens of another state, or by the citizens or

subjects of any foreign state."  U.S. CONST. amend XIV.  "Although the text of the

[Eleventh] amendment speaks only of suits against a state by persons who are not

citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to

extend to suits by all persons against a state in federal court."  *Mancuso v. New York*

*State Thruway Authority*, 86 F.3d 289, 292 (2d Cir. 1996)  (quoting *Hans v. Louisiana*,

134 U.S. 1, 10-11 (1890)).  Here, however, Plaintiff does not directly sue the State of

New York, but Roswell, which, as discussed, Discussion, *supra*, at 7, is a New York

---

[10] Although Defendant Roswell has not moved to dismiss the § 741 whistle blower claim on the basis of Eleventh Amendment immunity, an Eleventh Amendment immunity defense is jurisdictional and, as such, may be invoked at any stage of the proceedings.  *McGinty v. New York*, 251 F.3d 84, 94-95 (2d Cir. 2001).  Roswell has, however, thus far asserted only Plaintiff's failure to state a claim as its Fourth Affirmative Defense.  Roswell Answer (Doc. No. 28) ¶ 26.

public corporation, and Dr. Mohler, as Roswell's agent.

Eleventh Amendment immunity bars suits in law or equity, but "a plaintiff may sue a state official acting in his official capacity - notwithstanding the Eleventh Amendment - for 'prospective injunctive relief' from violations of federal law." *In re Deposit Insurance Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Notwithstanding, the Eleventh Amendment also deprives federal courts of supplemental jurisdiction over claims for injunctive relief against state officials based on state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-02 (1984). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state <u>agents</u> and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Central School District Board of Education*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997)) (underlining added). As such, Eleventh Amendment immunity will bar the instant action, based on § 741, as to Dr. Mohler, in his official capacity as Roswell's agent, if it is determined that Roswell "is more like 'an arm of the State,' such as a state agency, than like a 'municipal corporation or other political subdivision.'"[11] *Mancuso*, 86 F.3d at 292 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

Whether the "arm-of-the-state doctrine" under the Eleventh Amendment shields Roswell and, thus, Dr. Mohler as its agent, from a suit for liability under New York law in this court requires consideration of "six factors derived from the Supreme Court's

---

[11] The court's research reveals no federal or New York caselaw either establishing, or even considering whether, Roswell is an arm of the state or a state actor entitled to Eleventh Amendment immunity, and the parties have cited to none.

decision in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1991) . . . " and first articulated in *Feeney v. Port Authority Trans-Hudson Corporation*, 873 F.2d 628, 630-31 (2d Cir. 1989).  *Mancuso*, 86 F.3d at 293.  The six "*Feeney*" factors include: "(1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state."  *Mancuso*, 86 F.3d at 293.  Further, the Supreme Court has instructed that when all six *Feeney* factors do not point the same way, the Eleventh Amendment's central concern is protecting state treasuries such that the proper inquiry becomes whether "the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?"  *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 51 (1994) (considering whether  "bistate entity" entitled to Eleventh Amendment immunity).  The Court continued that "[w]hen the answer is 'No' - both legally and practically - then the Eleventh Amendment's core concern is not implicated."  *Id*.  Further, although *Hess* involved a bistate entity, the Second Circuit considers *Hess* "the proper starting place for [the court's] Eleventh Amendment inquiry . . . ."  *Mancuso*, 86 F.3d at 293. Accordingly, the court looks first to the six *Feeney* factors and, if those factors point in different directions, the court considers whether allowing the entity to be sued in federal court will (a) threaten the state's integrity and (b) expose the state treasury to risk, bearing in mind "the Supreme Court's emphasis that 'the vulnerability of the State's purse [is] the most salient factor.'"  *Id*. (quoting *Hess*, 513 U.S. at 48) (brackets in

original).  In other words, if the six *Feeney* factors are evenly balanced, then the *Hess*

inquiry controls.  *Mancuso*, 86 F.3d at 293.

With regard to the first *Feeney* factor, *i.e.*, how the entity is referred to in the

documents that created it, the New York Legislature declared Roswell is "a body

corporate and politic constituting a public corporation."  N.Y. Pub. Auth. Law §

3553(1)(a).  The term "body corporate and politic," however, has not been definitively

interpreted by the New York courts.  *Mancuso*, 86 F.3d at 294 (attempting to interpret

same phrase, "body corporate and politic constituting a public corporation," which the

New York Legislature also used in creating New York State Thruway Authority ("the

Thruway Authority")).  Rather, as observed by the Second Circuit, "[t]he Legislature has

used the phrase 'body corporate and politic' to refer to a wide variety of entities, some of

which we are certain would not be found to be arms of the state."  *Id*. (citing various

sections of the New York Public Authorities Law establishing a town water authority and

two separate city parking authorities).  The phrase has also been used in establishing

"other entities whose status under the Eleventh Amendment is far less certain." *Id*.

(citing various sections of New York Public Authorities Law establishing the Metropolitan

Transportation Authority and the State Dormitory Authority).  As such, the phrase "body

corporate and politic," by itself, does not establish whether Eleventh Amendment

immunity shields Roswell from liability in the instant action.

Nor does the phrase "public corporation" answer the inquiry.  New York law

defines a "public corporation" as either a "municipal corporation," a "district corporation,"

or a "public benefit corporation."  New York General Construction Law ("N.Y. Gen.

15

Constr. Law")[12] § 65(b).  Roswell, however, does not fit within the definition of either a "municipal corporation" which includes "a county, city, town, village and school district," N.Y. Gen. Constr. Law § 66(2), or a "district corporation" which includes "any territorial division of the state . . . whether or not such territorial division is expressly declared to be a body corporate and politic," *id.* § 66(3).  *See Mancuso*, 86 F.3d at 294 (concluding Thruway Authority is neither a municipal or district corporation).  Furthermore, the New York Legislature has generally created a "public benefit corporation" by using explicit terms.  *Mancuso*, *supra* (citing N.Y. Pub. Auth. Law §§ 1120-c (Town of Clifton Park Water Authority), 1470-b (City of Rome Parking Authority), and 1493-c (Albany Parking Authority)).

Here, the legislature specifically declared that "the creation of [Roswell] and the fulfillment of its corporate purposes is in all respects for the benefit of the people of the state of New York and is a public purpose."  N.Y. Pub. Auth. Law § 3566(1).  This language comports with the general definition of a "public benefit corporation," *i.e.*, "a corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which inure to the benefit of this or other states, or to the people hereof."  N.Y. Pub. Auth. Law § 66(4).  *See Yip v. Board of Trustees of State University of New York*, 2004 WL 2202594, *1 n. 2 (W.D.N.Y. Sept. 29, 2004) (referring to Roswell as "a public benefit corporation").  Nevertheless, even if Roswell does qualify as a New York public benefit corporation, it does not, as a matter of federal law, thereby necessarily become an "alter ego" or "arm of the state" of New York for purposes of the

---

[12] Unless otherwise indicated, references to N.Y. Gen. Constr. Law are to "McKinney 2003."

16

Eleventh Amendment. *Matherson v. Long Island State Park Commission*, 442 F.2d 566, 568 (2d Cir. 1971) (holding Long Island State Park Commission, a public benefit corporation, was not, as a matter of federal law, New York's alter ego or an "arm of the state" for purposes of Eleventh Amendment sovereign immunity).

The New York Legislature has, however, accorded Roswell at least one traditional state power - immunity from taxes, N.Y. Pub. Auth. Law § 3566(1). *Compare Mancuso*, 86 F.3d at 295 (observing Legislature had accorded Thruway Authority traditional state powers of immunity from local and state taxes and ability to acquire property by eminent domain, thus causing first *Feeney* factor to tip in favor of Eleventh Amendment immunity). That Roswell's enabling act requires actions for money damages to be brought in the New York Court of Claims, N.Y. Pub. Auth. Law § 3554(1), the exclusive forum for such actions against New York State, New York Court of Claims Act ("N.Y. Ct. Cl. Act")[13] (29A) § 9, also points to Eleventh Amendment immunity. As such, the court finds the first *Feeney* factor slightly weighs in favor of immunity for Roswell.

The second *Feeney* factor regarding the appointment of Roswell's directors and officers is much more unambiguous and points in favor of immunity. Specifically, 13 of the voting directors are appointed by either New York's governor, the state senate majority leader, the senate minority leader, the speaker of the New York assembly, or the minority leader of the assembly. N.Y. Pub. Auth. Law § 3553(1)(b). The other two directors include the New York State commissioner of health who serves ex-officio, and

---

[13] Unless otherwise indicated, references to N.Y. Ct. Cl. Act are to "McKinney 1989."

the president of the Roswell public corporation who is appointed by the board of directors, and who also serves ex-officio. *Id*. The governor also appoints the chairperson of Roswell's board of directors. *Id*. § 3553(3)(a). Given that Roswell's governing body is directly appointed by key elected officials of New York, the second *Feeney* factor thus favors immunity.

The third factor, how Roswell is funded, weighs against immunity. No provision of New York law requires the state to fund Roswell's general operations, and Dr. Mohler does not argue otherwise. Rather, the Legislature specifically granted Roswell authority to borrow money, issue bonds, invest and reinvest its funds, as well as to "collect rates, rentals, fees, lease payments and other charges for services rendered by it or for use of the facilities owned, controlled or administered by, or in the exercise of the powers of [Roswell]." N.Y. Pub. Auth. Law § 3554(10)-(13). Significantly, the Legislature has provided that New York "shall not be liable on the bonds or notes of [Roswell] and such bonds or notes shall not be a debt of the state, and such bonds and notes shall contain on the face thereof a statement to such effect." N.Y. Pub. Auth. Law § 3562. Nor does any provision of state law make the state responsible for debts or other liabilities, such as judgments or budget deficits, incurred by Roswell either directly or indirectly. Accordingly, the third *Feeney* factor points away from Eleventh Amendment immunity.

Whether Roswell's function is traditionally one of local or state government, the fourth *Feeney* factor in this case, also points away from immunity. Although N.Y. Pub. Auth. Law § 3566(1) provides that Roswell "shall be regarded as performing an essential governmental function in the exercise of the powers conferred upon it by this title," for which Roswell has been exempted from tax payments, the court's research

18

has revealed no state or federal caselaw determining that the provision and
management of a cancer research facility and hospital, like Roswell, is traditionally a
function of state or local government.  *See Reuber v. United States*, 750 F.2d 1039,
1068 n. 6 (9th Cir. 1984) ("Cancer research is not 'a function that has been traditionally
the exclusive prerogative of the State.'" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1011
(1982))).  *See also Barrett v. United Hospital*, 376 F.Supp. 791, 799 (S.D.N.Y. 1974)
("Even if it may be successfully argues that a private hospital is performing a public
function it is clear that the function involved is the admission and treatment of patients,
not the hiring and firing of doctors, nurses and other state personnel . . . . [such that
there is] no compelling authority for extending the 'public function' argument to a private
hospital in the absence of a nexus between the governmental function performed and
the violative activity alleged."), *aff'd*, 506 F.2d 1395 (2d Cir. 1974)).  As such, this
*Feeney* factor tips against immunity.

The fifth *Feeney* factor considers whether the state has a veto power over the
entity's actions.  Although Roswell's directors and the chairperson of the board of
directors are all appointed by New York's governor, majority and minority senate
leaders and the majority and minority assembly leaders, N.Y. Pub. Auth. Law § 3553(1),
such appointments are for four to five years, *id*, and, once appointed, there is no
provision permitting either state officers or the Legislature to review the actions of the
directors and the chairperson in their oversight of Roswell's management.  Nor is there
any provision granting New York veto power over Roswell's day-to-day activities either
directly or, by way of review of Roswell's planning and operations by the New York
governor or legislature, indirectly.  Rather, Roswell's only obligation to New York is to

submit to the governor, the comptroller, and several other state officials an annual reporting of its operations and quarterly reports of its fiscal condition.  N.Y. Pub. Auth. Law § 3568(4)-(5).  While Roswell's accounts are also subject to the state comptroller's supervision, *id*. § 3568(1), such audit and annual report requirements are silent as to any veto power held by the state over Roswell's actions.  Nor is there any statutory provision permitting the governor or any state official to remove any director prior to the expiration of the appointed term.  As such, the fifth *Feeney* factor weighs against immunity.  *See Mancuso*, 86 F.3d at 295 (determining fifth factor weighed against immunity where state had no veto power over Thruway Authority's actions, there was no provision for early removal of appointed Thruway Authority members, and Thruway Authority's only obligation to New York was submitting to state officials annual report outlining its operations and fiscal conditions).

Finally, with regard to the sixth *Feeney* factor, whether the entity's obligations are binding upon the state so as to place New York's treasury at risk, as discussed in connection with the third factor, Discussion, *supra*, at 13, New York is not liable "on the bonds or notes of [Roswell] and such bonds or notes shall not be a debt of the state, and such bonds and notes shall contain on the face thereof a statement to such effect." N.Y. Pub. Auth. Law § 3562.  Nor does any other New York statutory provision indicate that Roswell is structured in any other way than to be self-sustaining.  *See Mancuso*, 86 F.3d at 296 (observing relevant statutory provisions structured the Thruway Authority "to be self-sustaining").  Specifically, no state law provision renders New York responsible for Roswell's debts or budget shortfalls.  As such, nothing supports a finding that any judgment, including the one sought by Plaintiff, against Roswell would threaten New

York's finances, and thus the sixth *Feeney* factor points away from immunity.

Accordingly, of the six *Feeney* factors, only the first and second favor immunity, whereas the third, fourth, fifth and sixth point away from immunity and there is, thus, no need to consider the two purposes underlying the Eleventh Amendment protection articulated by the Supreme Court in *Hess*, 531 U.S. at 48.  *Mancuso*, 86 F.3d at 293. Nevertheless, as the instant motion is before the undersigned for report and recommendation, should the District Judge assess the *Feeney* factors as applied to Roswell differently than as recommended, the court considers *Hess's* stated direction that the two purposes of the Eleventh Amendment be upheld, including protection of the state's integrity and avoiding exposure of the state's treasury to risk.  *Hess*, 531 U.S. at 48.

New York's Legislature has sharply limited the availability of any assertion of sovereign immunity by Roswell, providing that Roswell "shall have power . . . to sue and be sued and to participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise . . . ."  N.Y. Pub. Auth. Law § 3554(1).  Although indicative of a waiver of a state's sovereign immunity, a statutory conferral of the right "to sue and to be sued" does not constitute a blanket waiver of Eleventh Amendment immunity with regard to tortious acts.  *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (noting that a state does not "consent to suit in federal court merely by stating its intention to 'sue and be sued'"); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (noting that "[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment").

21

As noted, Discussion, *supra*, at 17, the New York Court of Claims is to have "exclusive jurisdiction in all actions against the corporation [Roswell] for money damages," N.Y. Pub. Auth. Law § 3554(1), which is consistent with New York law providing that the jurisdiction of the Court of Claims is confined to claims for money damages against the State.  N.Y. Ct. Cl. Act § 9.  Because a federal court essentially acts as a state court in addressing, as in this case, pendent state claims, when exercising pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim, including any restrictions placed by the state regarding whether a plaintiff may bring a certain claim, *Pennhurst State School & Hospital*, 465 U.S. at 101-02, and if the state would not recognize a claim in state court, a federal court may not, through exercise of pendent or supplemental jurisdiction, allow such claim to be appended to the federal law claim in federal court.  *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding fact that action was brought in federal, rather than state court did not bar defendant corrections department employees from relying on New York statute barring personal capacity suits against corrections officers because such immunity statute was not merely procedural).  *See also Schaffer v. Evans*, 443 N.E.2d 485, 486 (N.Y. 1982) (holding plaintiff's claims "against the State officials were primarily claims against the State for money damages and as such could only be entertained in the Court of Claims").  "Exclusive jurisdiction" in New York's Court of Claims, however, does not displace a federal court's supplemental jurisdiction insofar as Plaintiff seeks equitable or injunctive relief, based on his § 741 claim.  *Cass v. State*, 448 N.E.2d 786, 787 (N.Y. 1983) (holding although claims primarily against the state for money damages must be brought in the New York Court of Claims, other state courts, such as New York

22

Supreme Court, may consider claims for equitable and injunctive relief against the state that are not primarily for money damages).

In fact, the New York Court of Claims has found that it is without jurisdiction over a public sector whistleblower claim seeking relief similar to that sought by Plaintiff in the instant action, Complaint at 5, Prayer for Relief, including reinstatement with full backpay, injunctive relief, and attorney fees, costs and disbursements.  *Taylor v. State*, 608 N.Y.S.2d 371, 376-78 (N.Y. Ct. Cl. 1994).  In *Taylor*, the plaintiff, a dental hygienist formerly employed at a state correctional facility, commenced an action alleging a public sector whistleblower claim pursuant to N.Y. Civ. Serv. Law § 75-b ("§ 75-b"), alleging constructive discharge, that the defendant public employer's motivation for such discharge was retaliation against the plaintiff for complaining about the failure of her supervisor, a dentist, to comply with various infection control procedures and practices in the dental clinic within the correctional facility, and seeking as relief reinstatement with full back pay, injunctive relief, attorney's fees, costs and disbursements.  *Taylor*, 608 N.Y.S. 2d at 373.  The Court of Claims construed the plaintiff's request as seeking primarily equitable relief over which the Court of Claims, in the absence of specific statute authority, does not have subject matter jurisdiction on a § 75-b claim, which must be brought in New York Supreme Court.  *Id.* at 374.

In considering whether the Court of Claims had subject matter jurisdiction over the plaintiff's § 75-b claim, in *Taylor*, the Court of Claims, observed that § 75-b permits a public employer to commence a retaliation action against a public employer "in a court of competent jurisdiction under the same terms and conditions as set forth in article twenty-C of the labor law."  *Taylor*, 608 N.Y.S.2d at 374 (citing N.Y. Civ. Serv. Law § 75-

b(3)(c)).  Section 75-b's reference to "article twenty-C of the labor law" is, significantly,

to N.Y. Lab. Law § 740(5), which also provides for a personnel retaliation action to be

brought "in a court of competent jurisdiction."  N.Y. Pub. Auth. Law § 740(3)(d).  *Id*.  The

court continued that "a court of competent jurisdiction" must, by definition, be able to

award the full relief authorized by the statute sought to be enforced.  *Taylor*, 608

N.Y.S.2d at 375.  N.Y. Lab. Law § 740 ("§ 740"), however, provides for relief other than

money damages, including:

   (a)   an injunction to restrain continued violation of this section;
   (b)   the reinstatement of the employee to the same position held before the
         retaliatory personnel action, or to an equivalent position;
   (c)   the reinstatement of full fringe benefits and seniority rights; and
   (d)   the payment of the employer of reasonable costs, disbursements and
         attorney's fees.

*Taylor*, 608 N.Y.S.2d at 374 (quoting N.Y. Lab. Law § 740(5)).

In *Taylor*, the court further stated that New York's statutory construction laws, requiring

statutes "be construed in the light of common sense," would not support a finding that

the Legislature would have granted a public sector whistleblower the right to being an

action in "a court of competent jurisdiction" for five separately enumerated types of

relief, and then limited the available forum for such claim to a court that was without

jurisdiction to order four of the five types of relief provided by the statute.  *Taylor*, 608

N.Y.S.2d at 377.  Likewise, in the instant case, because § 741(d) provides for

enforcement of a § 741 whistleblower retaliation cause of action pursuant to § 740(d),

despite Roswell's enabling legislation providing for suits for money damages against

Roswell only in the Court of Claims,[14] because the extensive nature of equitable relief available for a cause of action under § 740(d), the court finds that the Court of Claims is not "a court of competent jurisdiction" within the meaning of § 740(d) and, thus, is without jurisdiction over Plaintiff's instant claim pleaded under § 741.

This finding is further sustained by the fact that Roswell's enabling legislation provides that Roswell officers and employees, having been "deemed public officers or employees, as the case may be, in the [New York State] civil service, N.Y. Pub. Auth. Law § 3557.1, are also "entitled to all the rights thereto as if such employee was a state employee subject to the pertinent provisions of the civil service law."  N.Y. Pub. Auth. Law § 3557.5.  *See also* Discussion, *supra*, at 10.[15]  The Court of Claims has also held that although it is the proper venue for a suit for damages against Roswell resulting from the tortious conduct of an employee, "the Court of Claims lacks the jurisdiction to hear claims against individual defendants, even where those persons are State employees." *Holmes v. State*, 782 N.Y.S.2d 571, 573 (N.Y. Ct. Cl. 2004) (holding Court of Claims had exclusive jurisdiction over malpractice claim against Roswell, but no jurisdiction over same claim asserted against individual physician who, as a Roswell employee,

---

[14] The court research reveals no legislation exempting Roswell from liability under §§ 740 or 741, and any such legislation would undermine the purpose of New York's Healthcare Whistleblower's Protection Act to protect reporting of improper patient care services by private or public health care providers in New York.  *See* N.Y. Lab. Law § 741.  Significantly, Dr. Mohler does not contend Roswell is not within the definition of an "employer" covered by § 741.

[15] The court notes that despite the creation of a similar limited liability scheme for the New York State Thruway Authority, such entity has been held not immune from suit in federal court, for money damages, *Mancuso v. New York State Thruway Authority*, 909 F.Supp. 133, 134-35 (S.D.N.Y. 1995), under the Eleventh Amendment.  *Mancuso*, 86 F.3d at 297.  *See Zeidner v. Wulforst*, 197 F.Supp. 23, 25-27 (E.D.N.Y. 1961) (holding Thruway Authority not immune from suit under Eleventh Amendment but, rather, "has nevertheless been validly clothed with partial immunity [under state law] from suits" which precluded a personal injury action against the Thruway Authority in federal court on diversity jurisdiction) (bracketed material added).

allegedly treated patient at Roswell).  Thus, in the absence of any legislation expanding

the Court of Claims jurisdiction to entertain employee retaliation actions commenced

pursuant to §§ 740 or 741, actions against Roswell based on state law, including

Plaintiff's § 741 claim, are not restricted to the New York Court of Claims and, thus, are

cognizable in federal court based on diversity or supplemental jurisdiction.

Further, as discussed, Discussion, *supra*, at 17-18, Roswell is generally self-

funded and, with the exception of the appointment of Roswell's directors by the

governor and other state officials, is not under significant state control.  Under these

circumstances, it can hardly be said that subjecting Roswell to the instant action, if

successful in this court, would seriously interfere New York state's integrity.

As for the second stated purpose of the Eleventh Amendment, avoiding exposure

of the state's treasury to risk, *Hess*, 531 U.S. at 48, as discussed in connection with the

sixth *Feeney* factor, Discussion, *supra*, at 14, New York State, significantly, is not liable

for payment of any Roswell bonds or notes, N.Y. Pub. Auth. Law § 3562, or budget

deficits, and no New York statute indicates Roswell is structured in any other way than

to be self-sustaining.  As such, nothing supports a finding that any judgment against

Roswell, including one in this case, would pose a likely financial risk to New York's

treasury.

That the sixth *Feeney* factors and the two tie-breaker considerations raised by

*Hess* point away from Eleventh Amendment immunity for Roswell requires denying

Roswell and, thus, Dr. Mohler, as either its agent or employee, such immunity.[16]

---

[16] As discussed, Discussion, *supra*, at 11 n. 8, although Roswell has not moved to dismiss based
on Eleventh Amendment immunity, nor pleaded such immunity as an affirmative defense in its answer,

Furthermore, although Dr. Mohler maintains he is only a Roswell employee,

Defendant's Memorandum at 3 (referring to Dr. Mohler "as an employee of Roswell"), as

Plaintiff has alleged Dr. Mohler was Plaintiff's supervisor and Roswell's agent,

Complaint ¶ 3; Plaintiff's Response ¶¶ 1, 3 and 5, as discussed *infra*, Dr. Mohler may be

liable under the § 741 whistle blower statute.


### 2.      Applicability of § 741 Whistleblower Statute to Dr. Mohler

As relevant to the instant case, N.Y. Lab. Law § 741 provides for a cause of

action against any "employer" who takes retaliatory action against any employee who

> (a) discloses or threatens to disclose to a supervisor, or to a public body an
> activity, policy or practice of the employer or agent that the employee, in good
> faith, reasonably believes constitutes improper quality of patient care, or
> (b) objects to, or refuses to participate in any activity, policy or practice of the
> employer or agent that the employee, in good faith, reasonably believes
> constitutes improper quality of patient care.

N.Y. Lab. Law § 741(2).  Section 741 was enacted in 2002 and, to date, there are few

reported decisions addressing the Act, none from the New York Court of Appeals, and,

relevantly, none from any court construing the statute's definition of "employer."[17]

Controlling New York canons for statutory construction direct that "[t]he primary

consideration of the courts in the construction of [New York] statutes is to ascertain and

---

Doc. No. 28, such immunity is jurisdictional and, as such, cannot be waived and may be raised at any time during the proceedings, including for the first time on appeal.  *McGinty*, 251 F.3d at 94-95.

[17] The Second Circuit Court of Appeals recently certified to the New York Court of Appeals a question pertaining to the meaning of "health care services" as used in § 741 in regard to the term "employee," relying on the fact that the Governor's Bill Jacket accompanying the bill enacting § 741 suggested the more expansive construction urged by the plaintiff.  *Reddington v. Staten Island University Hospital*, 511 F.3d 126, 136 (2d Cir. 2007).  The New York Court of Appeals has not as yet responded to the certification.

give effect to the intention of the Legislature."  New York Statutes Law ("N.Y. Stat. Law")[18] § 92 (bracketed material added).[19]  The Legislature's intent is first sought from a literal reading of the statute itself, and all statutes relating to the same general subject-matter.  *Betz v. Horr*, 11 N.E.2d 548, 550 (N.Y. 1937) ("The intent and purpose of the legislative commands must be found from the statutes relating to the same general subject-matter taken as a whole.").  Under New York law, statutory terms in different statutes are to be equivalently interpreted when the statutes refer to the same subject matter and have the same objectives.  *Reddington*, 511 F.3d at 135 (citing N.Y. Stat. § 221).  Further, "[t]he courts may, in a proper case indulge in a departure from literal construction and will sustain the legislative intention although it is contrary to the literal letter of the statute."  N.Y. Stat. Law § 111.

The court first considers the text of the § 741 whistle blower statute, giving "words of ordinary import" in the statute their plain meaning.  *See* N.Y. Stat. Law § 232. Further, "[d]ictionary definitions may be useful as guide posts in determining the sense with which a word was used in a statute, but they are not controlling."  N.Y. Stat. Law § 234.  The term "employer" is defined under § 741 as meaning "any partnership, association, corporation, the state, or any political subdivision of the state which: (i) provides health care services in a facility licensed pursuant to . . . the public health law; (ii) provides health care services within a primary or secondary public or private school

---

[18] Unless otherwise indicated, references to N.Y. Stat. Law are to "McKinney 2008."

[19] When construing a state's statute, a federal court applies the state's statutory construction laws. *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 46 (2d Cir. 1996) (applying New York statutory construction laws in construing New York Debt. & Cred. Law § 151).

or public or private university setting; (iii) operates and provides health care services under the mental hygiene law or the correction law; or (iv) is registered with the department of education . . . ."  N.Y. Lab. Law § 741(1)(b).  Thus, the plain reading of § 741(1)(b) alone suggests the term "employer" does not include an individual, and thus would not include Dr. Mohler.

In addition to its rather limited definition of "employer," § 741 defines an "agent" as "any individual, partnership, association, corporation, or group of persons acting on behalf of an employer."  N.Y. Lab. Law § 741(1)(c).  Despite § 741's failure to specifically include "an individual" as within its definition of "employer," a plain reading of § 741 demonstrates it is to be construed in tandem with § 740, New York's general whistle blowers statute, N.Y. Lab. Law § 740.  Specifically, § 741(4) provides that "a health care employee[20] may seek enforcement of this section [741] pursuant to paragraph (d) of subdivision four of section seven hundred forty of this article."  N.Y. Lab. Law § 741(4) (bracketed material added).  Section 740 is New York's general whistle blower statute, and § 740(d) provides for a two-year period in which a health care employee who has been the subject of a retaliatory action by a health care employer may commence a civil action to enforce § 741, and provides for a civil penalty of not more than $10,000 to be assessed against an employer whom the court finds has acted in bad faith in the retaliatory action.  N.Y. Lab. Law § 740(4)(d).

That enforcement of § 741 is pursuant to § 740(d) is significant because § 740 defines the term "employer" as "any *person*, firm, partnership, institution, corporation, or

---

[20] Dr. Mohler does not argue that Plaintiff, in his former position at Roswell, was not a "health care employee" as used in § 741(4).

association that employs one of more employees." N.Y. Stat. Law § 740(1)(b). The difference between the definition of an "employer" under § 740, which includes a "person," and § 741, which does not, two statutes which are, by direction of § 741(d), to be construed in tandem, creates an ambiguity permitting the court to consider extrinsic material in determining the Legislature's intent as to the proper construction of the term "employer" as used in § 741. *See* N.Y. Stat. § 111; *Reddington*, 511 F.3d at 135 (New York statutory construction rules require equivalent construction of terms in statutes on same subject matter); *Betz*, 11 N.E.2d at 550 (same). *Contrast Raritan Development Corp. v. Silva*, 689 N.E.2d 1373, 1374-75 (N.Y. 1997) (when question is of pure legal interpretation of statutory terms, resort to extrinsic material is not necessary).

Regardless of the literal scope of the term "employer" as used in § 741, the legislative history of § 741 supports a finding that agents and supervisors were intended by the New York Legislature to be held liable in such whistle blowers actions. *See*, *e.g.*, N.Y. Legis. Serv. Governor's Bill Jacket, 2002 A.B. 9454, ch. 24 (Westlaw) (Summary of Provisions - providing "[e]ffective immediately upon enactment, this bill [§ 741] * * * expands the definition of employer to include *employer's agents*" (italics and bracketed material added); and Memorandum to James M. McGuire, Counsel to the Governor, from Dennis P. Whalen, Executive Deputy Commissioner of New York Department of Health - stating "[t]his 'whistleblowers protection bill' would provide health care services employees with explicit statutory protections against retaliation by employers or *supervisors* for identifying and reporting 'improper quality of patient care' to any public body." (italics added)). *See Reddington*, 511 F.3d at 136 (considering bill jacket information as to statutory construction issue concerning definition of "health care

services" as used in § 741 in regard to term "employee").[21]   Here, Plaintiff has alleged

that Dr. Mohler is Roswell's "agent" who acted in a supervisor capacity with regard to

Plaintiff's employment, possessing authority to hire and fire, as well as administer the

funding of the Fellowship program under which Plaintiff was employed and, as such,

was Plaintiff's employer.   Complaint ¶ 3; Plaintiff's Response ¶¶ 1, 3 and 5.   In support

of the instant motion, Dr. Mohler does not challenge the validity or accuracy of Plaintiff's

allegations describing Dr. Mohler's authority over the program and Plaintiff's status in it.

Accordingly, the court finds that Plaintiff's whistle blower claim under § 741 may be

maintained against Dr. Mohler who may be held liable in his capacity as Roswell's agent

or Plaintiff's supervisor, for purposes of Plaintiff's employment in the Fellowship

program, for a violation of § 741.

Defendant's motion therefore should be DENIED insofar as Plaintiff asserts a

violation of New York's Health Care Whistle Blower's Statute, § 741, against Dr. Mohler

in his capacity as Roswell's agent or Plaintiff's supervisor.

---

[21] At least one other New York statute allows a supervisor to be subject to individual liability.  *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (observing that although individual supervisors are not subject to liability for employment discrimination under Title VII, individual liability is possible under New York's Human Rights Law.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion to dismiss (Doc. No. 26) should be

GRANTED in part and DENIED in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May <u>29</u>, 2008
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      May 29, 2008
            Buffalo, New York